PEOPLE v MILLER

1. WITNESSES—LOSS OF MEMORY—IMPEACHMENT—PRIOR STATEMENTS.

A witness who states that he does not remember cannot be impeached by the showing of former statements regarding the facts which he claims not to have remembered, and the introduction of such prior statements would be of no value as affirmative evidence of the facts stated.

2. CRIMINAL LAW—WITNESSES—IMPEACHMENT.

Attempts by a prosecutor to impeach a witness who has testified that he does not remember certain facts by soliciting testimony from an investigating officer concerning prior statements of the witness about those facts constitutes reversible error.

3. CRIMINAL LAW—APPEAL AND ERROR—EVIDENCE.

The Court of Appeals does not sit as a reviewing jury and hear criminal cases *de novo,* and where there was competent evidence presented at trial to justify the verdict of the trier of fact that verdict is final.

4. CONSPIRACY—EVIDENCE—CIRCUMSTANTIAL EVIDENCE.

The proofs in a prosecution for criminal conspiracy must show that there was an understanding or agreement expressed or implied between two or more persons to either accomplish an unlawful end or to achieve a lawful end by illegal means; the proofs may be circumstantial in nature, but they must warrant a fair inference of the facts to be established (MCLA 750.157a).

5. CRIMINAL LAW—CORPUS DELICTI—EVIDENCE—CONFESSIONS—INCULPATORY STATEMENTS.

The corpus delicti of a crime may not be shown by only the

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 58 Am Jur, Witnesses §§ 672, 699, 703.
[3] 21 Am Jur 2d, Criminal Law § 245.
[4, 6] 16 Am Jur 2d, Conspiracy § 36.
[5] 29 Am Jur 2d, Evidence § 530.
  30 Am Jur 2d, Evidence § 1142.
[7] 5 Am Jur 2d, Appeal and Error §§ 545, 553.
[8] 29 Am Jur 2d, Evidence § 638 *et seq.*
[9] 63 Am Jur 2d, Prosecuting Attorneys § 27.

confession of the accused; a statement to a police officer by an accused admitting that he planned with others to commit a crime, standing alone, is insufficient to prove a conspiracy (MCLA 750.157a).

6. Conspiracy—Evidence—Sufficiency.

A conviction of conspiracy cannot be sustained where the only evidence which even touched upon showing any agreement between the defendant and others to perpetrate a break-in was contained in a tape-recorded statement of a witness who testified at trial that she did not remember making the statement, the defendant's inculpatory statement given to a sheriff, and the testimony of the investigating officer to whom the witness had made the tape-recorded statement, and where the tape recording and the testimony of the officer were admissible, if at all, only to impeach the witness and not as substantive evidence of the crime charged (MCLA 750.157a).

7. Criminal Law—Constitutional Law—Preserving Question.

The failure to object at trial in a criminal case does not preclude the Court of Appeals from reviewing an alleged error where a constitutional right such as the right to remain silent is likely to have been infringed.

8. Criminal Law—Constitutional Law—Evidence—Silence of Accused.

The admission of testimony that an accused remained silent after being advised of his right to do so is reversible error unless such testimony was introduced to impeach the accused's inconsistent statements at trial or unless it can be shown the testimony was harmless error beyond a reasonable doubt.

9. Criminal Law—Appeal and Error—Prosecution's Failure to Respond.

The prosecution's complete failure to respond to the issues raised by the defendants on appeal in a criminal case where a defendant's allegations of error on appeal go to the question of whether the prosecution's actions at trial were prejudicial and resulted in an unfair trial will be construed as an admission that the prejudice complained of existed.

Appeal from Gogebic, Donald L. Munro, J. Submitted Division 3 April 6, 1973, at Grand Rapids. (Docket No. 14532.) Decided August 28, 1973.

Raymond Miller was convicted of conspiring to

break and enter with intent to commit larceny, breaking and entering with intent to commit larceny, and larceny in a building. Defendant appeals. Reversed and remanded for new trial.

*Richard S. McMillin,* Assistant State Appellate Defender, for defendant.

Before: HOLBROOK, P. J., and T. M. BURNS and CHURCHILL,* JJ.

T. M. BURNS, J. Defendant was convicted by a jury of conspiring to break and enter with intent to commit larceny, breaking and entering with intent to commit larceny, and larceny in a building.[1] He was sentenced to concurrent terms of from four to ten years imprisonment on the larceny and breaking and entering counts and from two to five years imprisonment on the conspiracy charge.

On the morning of August 19, 1972, the proprietor of Leo's Grocery in Marenisco, Michigan, discovered that his establishment had been broken into during the previous night and that various merchandise had been stolen. The incident was reported to the State Police.

The officer assigned to investigate the case learned that Janet Price, a friend of the defendant, might have information concerning the crime. She was taken to the State Police post and after being advised of her constitutional rights in accordance with *Miranda v Arizona,*[2] she voluntarily gave a tape-recorded statement to the police which implicated the defendant in the crime. As a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] MCLA 750.157a, MSA 28.354(1); MCLA 750.110, MSA 28.305; and MCLA 750.360, MSA 28.592 respectively.

[2] 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

result, the defendant was arrested and subsequently gave a statement to the sheriff which admitted that he had planned and participated in the breaking and entering with other individuals.

At defendant's trial, Janet Price was called to the stand by the prosecution. To most of the prosecution's inquiries concerning her knowledge of the crime she responded, "I don't remember". The jury was excused and the witness's tape-recorded statement was played in an effort to refresh her recollection. However, the witness steadfastly maintained that her memory was not refreshed. The prosecutor then requested to cross-examine the witness. The trial court granted the request. During the cross-examination phase of the witness's testimony, the prosecutor was able to elicit many more positive responses than he had been able to do on direct examination. On two occasions during the cross-examination of witness Price by the prosecutor, she was asked if she had told the investigating officer about a conspiracy to commit the crime. Both times the witness stated she did not remember.

Next the prosecutor called the investigating officer to the stand. In response to the prosecution's queries, the officer proceeded to explain what witness Price had related in her statement with regard to the plans for a breaking and entering. The trial court, however, admonished the prosecutor to restrict the questioning to matters testified to by witness Price while she was on the stand.

Finally, the entire tape-recorded statement of witness Price was played to the jury. The trial court instructed the jury, however, that the tape-recorded statement could only be used to impeach the credibility of witness Price and could not be considered as substantive evidence that the crime had been committed.

I

As the first assignment of error on appeal defendant argues that the prosecutor improperly impeached witness Price by introducing into evidence statements she could not remember and which she had not testified to on direct examination.

The procedure employed to impeach witness Price in the case at bar was similar to that used in *People v Durkee,* 369 Mich 618; 120 NW2d 729 (1963). In *Durkee,* the defendant was charged with negligent homicide as a result of an automobile collision. A passenger who had been riding in the front seat of the defendant's auto at the time of the mishap gave a statement to a deputy sheriff while at the hospital. At trial the passenger was called to the stand but indicated she had no recollection of the collision or of making a statement to the police. The prosecutor was allowed to cross-examine the witness about her prior statement. However the witness maintained she had no recollection of the matter. Subsequently the deputy sheriff was summoned to the stand by the prosecutor and related that the witness was asked certain questions about the accident. The deputy also explained how those questions were answered. The Supreme Court reversed the defendant's conviction on the grounds the passenger-witness was improperly impeached. The Court quoted from *Anthony v Hobbie,* 85 Cal App 2d 798, 804; 193 P2d 748, 751 (1948), which held:

" 'Where a witness merely states that he does not remember he cannot be impeached by the showing of former statements regarding the facts which he claims not to have remembered. In any event the introduction of such prior statements would be of no value as affir-

mative evidence of the facts stated but would only serve to impeach the statement that the witness does not now remember. Thus there would be no introduction of any positive evidence by the admission of the former statements concerning the facts of the accident.' " *People v Durkee, supra,* 625; 120 NW2d at 732.

The Court then went on to state that the prosecutor's efforts to impeach the witness were " * * * purely negative, because it was not directed toward facts the witness testified to but rather toward facts to which the witness did not testify". 369 Mich at 626; 120 NW2d at 732.

Such is the case here. Close scrutiny of the transcript discloses that in responding to the prosecutor's questions designed to impeach witness Price, some of the investigating officer's testimony went beyond the responsive answers given by witness Price while she was on the stand. This testimony was not inadvertent but was solicited by the prosecutor. Under the rationale of *Durkee* these attempts by the prosecutor to impeach witness Price that were directed toward facts to which she did not testify or recall constituted reversible error. Moreover, since the witness's tape-recorded statement to the police included facts about the crime she could not recall at the time of the trial, the error was compounded when the tape-recorded statement was played to the jury for impeachment purposes.

## II

Next it is the defendant's position that there was insufficient evidence presented at trial to sustain the conspiracy conviction.

This Court does not sit as a reviewing jury and hear criminal cases *de novo.* Where there was

competent evidence presented at trial to justify the trier of fact's verdict, that verdict is final. *People v Harper,* 43 Mich App 500; 204 NW2d 263 (1972), *lv den* 389 Mich 759 (1973).

In a prosecution for criminal conspiracy, the proofs must show that there was an understanding or agreement expressed or implied between two or more persons to either accomplish an unlawful end or to achieve a lawful end by illegal means. *People v Tenerowicz,* 266 Mich 276; 253 NW2d 296 (1934); *People v Newsome,* 3 Mich App 541; 143 NW2d 165 (1966), *lv den* 378 Mich 745 (1966). The proofs may be circumstantial in nature, however, they must warrant a fair inference of the facts to be established. *People v Sobczak,* 344 Mich 465; 73 NW2d 921 (1955).

A review of the record in the instant case discloses that the only evidence which even remotely touched upon showing any agreement between the defendant and others to perpetrate the break-in was contained in the tape-recorded statement of witness Price which was played to the jury, the defendant's inculpatory statement given to the sheriff, and the testimony of witness Price and the investigating officer. We now turn to examine the probative value of this evidence.

Witness Price, when queried about her statement to the police that the defendant and others had planned the crime, explained that she did not remember making the statement. Patently this was not sufficient evidence to establish the conspiracy. The investigating officer was called to the stand and related that witness Price did in fact make the statement that the defendant had planned with others to break into the grocery store. However not only did the trial court instruct the jury that the officer's statement could only be

considered in assessing witness Price's credibility and not as substantive evidence of the commission of any crime, the officer's statement was inadmissible and in plain violation of *People v Durkee,* discussed *supra.* Moreover, these same reasons negate the probative value of the tape recording played to the jury as far as substantive proof of any conspiracy is concerned. Finally although the defendant admitted in his statement given to the sheriff that he had planned with others to commit the crime, this statement standing alone, as it does, is insufficient to prove the conspiracy since the corpus delicti of a crime may not be shown by only the confession of the accused. *People v Barron,* 381 Mich 421; 163 NW2d 219 (1968). From the foregoing it is readily apparent that there was an insufficiency of competent evidence presented to show an agreement or understanding between the defendant and others to commit the crime in question. Therefore defendant's conviction in the conspiracy charge cannot be sustained, and we so hold.

### III

During the the course of the direct examination of the investigating officer, the following colloquy occurred between the witness and the prosecutor:

"*Mr. Nadolney [the prosecutor]:* When you state that you advised the defendant; is that the defendant here in the courtroom there,—

"*A.* Yes.

"*Q.* Mr. Miller?

"*A.* Yes.

"*Q.* And what did you do as far as advising the rights? Will you relate—

"*A.* Well, we have a card given to us by our depart-

ment with all the rights on it, and I read the rights to him off the card.

"*Q.* Have you got a copy of the card?

"*A.* Yes, I have.

"*Q.* Would you read it?"

The *Miranda* rights were read to the jury, and the witness continued:

"And I asked him, 'Do you understand what I just told you, and after he answered, I asked him if he wanted an attorney, and after that, *I asked if he wished to waive or give up the right to remain silent. I asked him these questions; he said that he did not want to give a statement at that time.*"(Emphasis added.)

Even though there was no objection, the defendant argues that the foregoing series of questions and answers, particularly the italicized portion, resulted in a violation of his right to remain silent contrary to US Const Am V and Const 1963 art 1, § 17.

At the outset we note that the failure to object at trial does not preclude this Court from reviewing an alleged error where, as here, a constitutional right is likely to have been infringed. *People v Thomas,* 44 Mich App 649; 205 NW2d 604 (1973); *People v Cotton,* 38 Mich App 763; 197 NW2d 90 (1972).

The admission of testimony that an accused remained silent after being advised of his right to do so is reversible error unless such testimony was introduced to impeach the accused's inconsistent statements at trial or unless it can be shown the testimony was harmless error beyond a reasonable doubt. *People v Graham,* 386 Mich 452; 192 NW2d 255 (1971); *People v Severance,* 43 Mich App 394; 204 NW2d 357 (1972), *lv to app den* 389 Mich 758 (1973); *Chapman v California,* 386 US 18; 87 S Ct

824; 17 L Ed 2d 705 (1967), *reh den* 386 US 987; 87 S Ct 1283; 18 L Ed 2d 241 (1967).

Here the defendant did not take the stand at trial. Therefore there can be no question that the testimony complained of was admitted to impeach the defendant's prior inconsistent statements. Furthermore since the prosecutor neither filed a brief in opposition nor appeared at oral argument, there is no showing that the admission of the testimony was harmless beyond a reasonable doubt. Therefore the admission of the investigating officer's testimony quoted above was reversible error.

## IV

The remainder of the defendant's allegations of error are directed toward prejudicial conduct by the prosecutor which resulted in an unfair trial. Specifically defendant asserts that the prosecutor during closing argument: (1) inferred that testimony admitted for impeachment purposes only could be used as substantive evidence, (2) misstated testimony that was stricken from the record, and (3) introduced his personal testimony concerning the honesty of a crucial witness.

Appellate counsel for the defendant not only submitted a brief to this Court which set forth the facts of the case and thoroughly analyzed the applicable law, but also appeared at oral argument in support of his position.

On the other hand, the prosecution, although given timely notice and ample opportunity failed to prepare or file an appellate brief, appear at oral argument, or oppose defendant's appeal in any other manner.

In a criminal case where a defendant's allegations of error on appeal go to the question of

whether the prosecution's actions at trial were prejudicial and resulted in an unfair trial, the prosecution's complete failure to respond to the issues raised by the defendant on appeal will be construed as an admission that the prejudice complained of existed. *People v Hatfield,* 46 Mich App 149; 207 NW2d 485 (1973); *People v Walma,* 26 Mich App 326; 182 NW2d 110 (1970).

Therefore inasmuch as the defendant in the case at bar has raised numerous questions relating to the alleged prejudicial trial conduct of the prosecutor, and since the prosecution has utterly failed to respond to the defendant's contentions, we find that the prejudice complained of by the defendant to have occurred and that as a consequence defendant was denied a fair trial.

Accordingly for the reasons delineated above, defendant's conviction is reversed and the cause is remanded for a new trial.

All concurred.